IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

ANTHONY APANOVICH, *et al.*,

        Plaintiffs,

                              CASE NO. 2:05-CV-1015

  v.

                              MAGISTRATE JUDGE KING

ROBERT TAFT, *et al.*,

        Defendants.

**OPINION AND ORDER**

      This is a civil rights action under 42 U.S.C. §1983, in which plaintiffs, an inmate on Ohio's death row ("Apanovich"), an individual who plans to attend Apanovitch's execution, a non-profit organization and a newspaper, allege that Ohio's procedures in connection with executions violate the constitutional rights of the public and press to observe an execution and the constitutional rights of the condemned to have his counsel present and his execution "fully observed."  With the consent of the parties, 28 U.S.C. § 636(c), this matter is before the Court on *Defendants' Motion to Dismiss* for failure to state a claim upon which relief can be granted.  Doc. No. 5.  For the reasons set forth below, *Defendants' Motion to Dismiss* is **GRANTED** in part and **DENIED** in part.

**I.    RELEVANT FACTS**

      In February, 2005, Apanovitch filed a document titled "*Emergency Expedited Grievance*" with the Ohio Department of Rehabilitation and Correction ("DRC"), alleging that defendants violated his rights under the Eighth and Fourteenth Amendments to the United States

Constitution by barring his witnesses from viewing fully his execution and by infringing upon his right to counsel by precluding the attendance of his attorney as an additional witness. *Amended Complaint* ¶ 42. Aponovitch alleges that he filed the *Emergency Expedited Grievance* sometime in February 2005; however, the grievance is not dated, is not contained on a standard grievance form and is not stamped to indicate the date that it was received by the DRC. *Exhibit* attached to *Complaint*.

Apanovitch alleges that nearly five months later, he had not received a response to the *Emergency Expedited Grievance*. *Complaint* ¶ 43. On June 2, 2005, Apanovitch wrote a letter to the Chief Inspector's office, which made inquiry into the status of the grievance. *Id.*; *Exhibit* attached to *Complaint*.

On June 8, 2005, that office responded to Apanovitch by letter, stating: "I have received your letter and cannot let you [*sic*] why you have not heard anything about your request." *Id.* The letter then suggested that Apanovitch contact the Division of Legal Services about his concerns. *Id.*

On June 22, 2005, Apanovitch sent a letter to the Division of Legal Services, inquiring about this "complaint." *Id.* Apanovitch also warned that he would consider his state remedies exhausted should he not receive a response within 14 days. *Id.*

On June 30, 2005, the Division of Legal Services contacted Apanovitch by a letter that reads in its entirety:

> Re: Your letter dated 6/22/05
>
> I am writing in response to a letter that was directed to DRC Legal Services to the attention of Mr. Trout. In your letter you reference a complaint made in a previous correspondence. I have no record of this correspondence. I cannot determine the nature of your complaint from your most recent correspondence.

2

> If you would please write me and explain the nature of your complaint I will respond to your concerns.

*Id.*

On July 10, 2005, Apanovitch responded in pertinent part as follows:

> I have done everything possible to avail myself of the state remedies available to me as a death row prisoner. I have given extra time for the complaint to be addressed, and/or, resolved. At this point I have no legitimate, available state remedies, and therefore have turned the matter over to counsel.

*Id.* Apanovitch did not include a copy of the complaint with this letter.

On November 9, 2005, plaintiffs initiated this action. On January 20, 2006, defendants filed *Defendants' Motion to Dismiss*. On March 6, 2006, plaintiffs filed their *Response and Memorandum in Opposition to Defendants' Motion to Dismiss* ("*Plaintiffs' Memorandum Contra*"), Doc. No. 9, to which defendants replied on March 20, 2006 ("*Defendants' Reply*"), Doc. No. 10.

## II. STANDARD OF REVIEW

Defendants move to dismiss plaintiff's claims for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6). A motion to dismiss under Rule 12(b)(6) attacks the legal sufficiency of the complaint. *Roth Steel Prod. v. Sharon Steel Co.*, 705 F.2d 134, 155 (6th Cir. 1983). In determining whether dismissal on this basis is appropriate, the complaint must be construed in the light most favorable to the plaintiff, and all well-pleaded facts must be accepted as true. *Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974); *Bower v. Federal Express Corp.,* 96 F.3d 200, 203 (6th Cir. 1996); *Misch v. The Cmty. Mutual Ins. Co.,* 896 F. Supp. 734, 738 (S.D. Ohio 1994). A claim will be dismissed if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."

3

*Conley v. Gibson,* 355 U.S. 41, 45-46 (1957).

Thus, this Court will grant a motion to dismiss under Rule 12(b)(6) if the complaint is without merit because of an absence of facts or law to support the claims in it or if, on the face of the complaint, there is an insurmountable bar to relief. *See generally, Rauch v. Day & Night Mfg. Corp.,* 576 F.2d 697, 702 (6th Cir. 1978).

### III. ANALYSIS

Defendants base their motion to dismiss on Apanovitch's alleged failure to exhaust administrative remedies available to him. The Prison Litigation Reform Act of 1996 ("PLRA") requires a prisoner to exhaust administrative remedies available to the prisoner prior to filing an action in a federal court. 42 U.S.C. §1997e(a) (2004). The PLRA states in pertinent part as follows:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

*Id.* The plaintiff-prisoner bears the burden of proving that available administrative remedies have been fully exhausted, *Baxter v. Rose*, 305 F.3d 486, 488 (6th Cir. 2002). Although exhaustion is not a jurisdictional predicate, it is nevertheless mandatory, *Wyatt v. Leonard*, 193 F.3d 876, 879 (6th Cir. 1999), even if proceeding through the administrative system would appear to the inmate to be "futile." *Hartsfield v. Vidor*, 199 F.3d 305, 308-10 (6th Cir. 1999).

In addition, grievances filed in an attempt to exhaust administrative remedies must reasonably inform prison officials of the subject of the grievance so that those officials are afforded the opportunity to address the claims before suit is brought in federal court. *Curry v. Scott*, 249 F.3d 493, 505 (6th Cir. 2001); *Walton v. Bouchard*, 136 Fed. Appx. 846, 849 (6th

Cir. 2005).  The purpose of the "exhaustion requirement is to provide states the first opportunity to resolve problems themselves."  *Thomas v. Woolum*, 337 F.3d 720, 726 (6th Cir. 2003).

The standard administrative grievance procedure available to prisoners in Ohio consists of three steps.  *See* Ohio Administrative Code § 5120-9-31.  First, an inmate must file an informal complaint.  *Id.*  If that complaint is not resolved to the inmate's satisfaction, the inmate can appeal the decision to the Inspector of Institutional Services.  *Id.*  If that appeal is found to be without merit, the inmate can appeal the decision to the Chief Inspector.  *Id.*  Prisoner complaints against institutional inspectors must be addressed directly to the Chief Inspector's Office.  *Id.* § 5120-9-31(L).

In the case *sub judice*, Apanovitch admits that he fell "short of strict compliance" with the statutory requirements for bringing, and exhausting, the administrative remedies available to him.  *Plaintiff's Memorandum Contra* at 5.  However, Apanovitch argues that his "shortfall was occasioned by the Defendants' action or inaction."  *Id.*  Apanovitch specifically contends that he was unable to exhaust his administrative remedies because defendants did not respond to his grievance.  That being the case, plaintiff argues, this Court should deem his "substantial compliance" with the exhaustion requirements to be acceptable. *Id.*  Apanovitch's argument is not well-taken for two reasons.

First, the United States Court of Appeals for the Sixth Circuit has held that a prisoner cannot simply abandon the grievance process before completion and then claim that he has exhausted his administrative remedies.  *Boyd v. Corrections Corp. of America*, 380 F.3d 989 (6th Cir. 2004).  Even accepting as true Apanovitch's allegation that he filed the *Emergency Expedited Grievance* on February 28, 2005, and that defendants misplaced it, plaintiff abandoned

5

the grievance process before it was completed by failing to provide a copy of the *Emergency Expedited Grievance* when he was asked to provide another copy of this document. *See Exhibit* attached to *Complaint.*

Second, this Court simply cannot permit "substantial compliance" to substitute for complete exhaustion in this action. As the Sixth Circuit recently explained:

> As we noted in *Wyatt*, under the PLRA, the district court no longer has discretion to waive exhaustion as it did prior to the Act. *Wyatt*, 193 F.3d at 879. We have allowed substantial compliance only in the limited circumstance where the events giving rise to the prisoner's claim occurred prior to the effective date of the PLRA. *Wolff v. Moore*, 199 F.3d 324, 327 (6th Cir. 1999); *Wyatt*, 193 F.3d at 879-80. The substantial compliance doctrine is inapplicable here. *See, e.g.*, *Dodson v. Ohio Dep't of Corrections*, 2000 U.S. App. LEXIS 14083, No. 99-3521, 2000 WL 799768 (6th Cir. June 14, 2000) (order) (holding that substantial compliance did not apply to excuse the prisoner's failure to exhaust fully administrative remedies because his claims arose after the effective date of the 1996 Act); *Taylor v. Henson*, 2000 U.S. App. LEXIS 9982, No. 99-6026, 2000 WL 658667 (6th Cir. May 10, 2000) (order) (same).

*Brock v. Kenton County*, 93 Fed. Appx. 793, 799 2004 U.S. App. LEXIS 5984 (6th Cir. 2004). Because Apanovitch's claims arose after the effective date of the PLRA, the substantial compliance doctrine is inapplicable.

Because Apanovitch abandoned the administrative process before its completion, DRC simply was not afforded the opportunity to resolve the issue plaintiff now presents to this Court. *See Woolum*, 337 F.3d at 726 (the purpose of the "exhaustion requirement is to provide states the first opportunity to resolve problems themselves."). Under these circumstances, the claims of plaintiff Apanovitch must be dismissed, without prejudice, for failure to exhaust his administrative remedies.

Defendants also contend that, in light of the failure of plaintiff Apanovich to fully exhaust his administrative remedies, all claims asserted in this action -- even those presented by

other plaintiffs -- must be dismissed. The Court is unaware of any procedural prerequisite to the prosecution of the claims of the non-prisoner plaintiffs. Indeed, and as plaintiffs correctly note, defendants offer no legal basis for their proposed result. Even as to inmate claims, the United States Court of Appeals for the Sixth Circuit has recently affirmed that where some, but not all, inmate claims have been exhausted, those claims that are fully exhausted should be permitted to proceed. *Spencer v. Bouchard,* 449 F.3d 721, 726 (6th Cir. 2006). Under these circumstances, the Court concludes that, as it relates to the claims asserted by the non-prisoner plaintiffs, the motion to dismiss is without merit.

**WHEREUPON**, as it relates to plaintiff Anthony Apanovitch's claims, *Defendants' Motion to Dismiss*, Doc. No. 5, is **GRANTED.** The claims of this plaintiff are **DISMISSED** without prejudice for failure to exhaust. As the motion relates to the claims of the remaining plaintiffs, the motion to dismiss is **DENIED**.

July 21, 2006            *s/Norah McCann King*
Date                 Norah M<sup>c</sup>Cann King
                   United States Magistrate Judge